# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

TERRELL PORTER,      )
                    )
     Plaintiff,    )
                    )
v.                 )     No. 4:17-cv-2565-JAR
                    )
UNKNOWN WILLIAMS,  )
                    )
     and       )
                    )
UNKNOWN DICKERSON,  )
                    )
     Defendants.  )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Desree Dickerson and Arethee Williams's

Motion for Summary Judgment. (Doc. 19.) Plaintiff Terrell Porter did not respond.[1]

### Facts[2]

On the morning of July 31, 2013, Dickerson, then a probationary officer with the St.

Louis County Police Department, was on patrol with her field trainer, Officer Robert Wallace.

---

[1] On July 16, 2019, the Court directed Porter to respond to Defendants' Motion. (Doc. 22.) A copy of that order was sent to Porter's last known address at Algoa Correctional Center in Jefferson City, MO. (Doc. 23 at 2.) That order was returned as undeliverable. (Doc. 23.) Believing that the order was addressed to Porter using the wrong inmate number, the Court entered a second order directing Porter to respond and sent a copy of that order to Algoa using the corrected inmate number. (Doc. 24.) That mailing was also returned as undeliverable. (Doc. 25.) The Court believes Porter is no longer incarcerated at Algoa, but he has not updated his address. The duty to promptly notify the Clerk and all other parties of any change in address rests on the Plaintiff. E.D. Mo. L. R. 2.06(B).

[2] The Court adopts Defendants' Statement of Uncontroverted Material Facts, (Doc. 21). *See Roe v. St. Louis Univ.*, 746 F.3d 874, 881 (8th Cir. 2014) (citing *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1033 (8th Cir. 2007) ("If no objections have been raised in the manner required by the local rules, a district court will not abuse its discretion by admitting the movant's facts.").

Around 9 a.m., Dickerson and Wallace responded to a dispatch for a burglary in progress at 1127 Laredo Avenue in the Spanish Lake neighborhood of St. Louis. The dispatcher reported that two black men had been seen trying to kick down the door. When they arrived on Laredo Avenue, a St. Louis County Police Sergeant told Dickerson and Wallace that he had seen two black men in white t-shirts run out the back door of the home.

Dickerson and Wallace began searching the area for the men, following tips from several neighbors. The officers soon spotted a black man wearing a white t-shirt hiding behind a tree. When Dickerson approached, the man fled, ignoring the officers' warnings to stop. The officers split up and pursued the man.

A resident on Reale Avenue signaled Wallace and pointed to his backyard. Wallace entered the yard and saw the man they had been chasing, standing on the concrete patio. Wallace ordered the man to show his hands and noticed what appeared to be "a cutting instrument" in the man's pocket. Wallace slowly approached the man and ordered him to get on the ground. The man did not comply. When he was close enough, Wallace "used a single arm bar" technique to take the man down onto the patio and then climbed on top of the man in order to handcuff him. The man continued to resist, refusing to offer his other arm.

When Dickerson heard Wallace yelling, she ran to assist. When she got to the yard, she saw Wallace on top of the man, attempting to handcuff him. She noticed what appeared to be a pocket knife clip in the man's pants pocket. Dickerson ran to the patio, pulled the man's arm out from under him, and held it behind his back while Wallace secured the second handcuff. The man was eventually identified as Porter, whom the Sergeant and neighbors recognized as one of the two they had seen fleeing from Laredo Avenue.

Williams was also on patrol the morning of July 31 and responded to the dispatcher's report of a burglary in progress. She was canvassing the area for suspects as Dickerson and

Wallace were pursuing and apprehending Porter. When Porter was in custody, Williams was directed to transport a witness from her home at 1126 Laredo—the house directly across the street from the burglary—to Reale Avenue. Dickerson and Wallace stood with Porter in the front yard. Williams stopped the car and the witness identified Porter as one of the men she had seen trying to kick in the door at 1127 Laredo. Williams then drove the witness back to her home and left the area.

St. Louis County Police Sergeant Ray Rice drove to the Reale Avenue house to perform a "use of force" investigation. He spoke to a man whose back yard abutted the patio where Porter had been apprehended. The man told Rice that had seen police cars and heard yelling coming from behind his house. When he went outside, he saw Porter refusing to comply with Wallace's orders to get on the ground. He watched Wallace "tackle" Porter and attempt to handcuff him. The man said that he could see Porter resisting until Dickerson arrived and helped secure Porter's arms. He said he could hear Porter yelling, "Stop kicking me!" but never saw either officer kicking Porter.

Rice then spoke to both Dickerson and Wallace and examined Porter for injury. Medical personnel had placed a gauze bandage over an abrasion on his swollen right cheek. Rice noted the abrasion and swelling were consistent with Wallace's description of using an arm bar to take Porter down on the concrete patio. Rice observed no other injuries and nothing consistent with having been kicked. Porter was transported to the hospital for a "fit for confinement" evaluation.

### Procedural History

On October 19, 2017, Porter filed this suit, alleging that Dickerson and Williams had used excessive force on the night of his arrest in violation of 28 U.S.C. § 1983. (Doc. 1.) He sued both officers in their official and personal capacities and also named St. Louis County as a defendant. (*Id.*) Porter claimed that he had been kicked in the face and that he had suffered

3

"injuries to the face, lacerations, scars, fractured cheek bone, fractured eye socket[,] concussion[, and] hospitalization." (*Id.* at 5.) He alleged that the injuries resulted in "loss of life," mental and emotional stress, "loss of job funds etc.," and sought $250,000 in compensatory damages plus $750,000 in punitive damages. (*Id.* at 5-6.)

On initial review, this Court dismissed Porter's claims against St. Louis County and his official-capacity claims against Dickerson and Williams. (Doc. 6.) The officers then filed this Motion for Summary Judgment, arguing that Dickerson's use of force was reasonable and that Williams never got out of her cruiser. (Doc. 20.)

## Legal Standards

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). In ruling on a motion for summary judgment, all reasonable inferences must be drawn in a light most favorable to the non-moving party. *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). The evidence is not weighed and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008). Judgment as a matter of law is appropriate only when there is no legally sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party. Fed. R. Civ. P. 50(a).

"The essential elements of a § 1983 claim are (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009) (citing *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999)). "A public official 'acts under color of law when he misuses power possessed by virtue of . . . law and made possible only because he was

clothed with the authority of . . . law.'" *Ramirez-Peyro v. Holder*, 574 F.3d 893, 900 (8th Cir. 2009) (quoting *United States v. Colbert*, 172 F.3d 594, 596 (8th Cir. 1999)). "[A] public official acts under color of law when that official 'abuses the position given to him by the State.'" *Id.* (quoting *West v. Atkins*, 487 U.S. 42, 49-50 (1988)).

That said, government actors are entitled to qualified immunity when they can show that their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Treats v. Morgan*, 308 F.3d 868, 871 (8th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts ask two questions when resolving a government official's qualified-immunity claim: "[Do] the facts, taken in a light most favorable to the party alleging an injury, show a violation of a constitutional or statutory right?" and, if so, was that right "so clearly established that it would have been 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted?'" *Id.* at 871-72 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). If the answer to either question is "No," the defendant is entitled to qualified immunity.

The Fourth Amendment prohibits the use of excessive force during an arrest. When reviewing claims of excessive force, courts ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Winters v. Adams*, 254 F.3d 758, 765 (8th Cir. 2001) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Cty. of Los Angeles, Calif. v. Mendez*, 137 S. Ct. 1539, 1546 (2017) (quoting *Graham*, 490 U.S. at 396).

"Relevant considerations include: 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

resisting arrest or attempting to evade arrest by flight.'" *Thompson v. City of Monticello, Arkansas*, 894 F.3d 993, 998 (8th Cir. 2018) (quoting *Burnikel v. Fong*, 886 F.3d 706, 710 (8th Cir. 2018)). Courts may also consider whether "the situation is tense, uncertain, and rapidly evolving, which would force an officer to make split-second judgments about how much force is necessary." *Id.* (quoting *Coker v. Arkansas State Police*, 734 F.3d 838, 843 (8th Cir. 2013)). "The degree of injury is certainly relevant insofar as it tends to show the amount and type of force used," but "there is no uniform requirement that a plaintiff show more than de minimis injury to establish an application of excessive force." *Chambers v. Pennycook*, 641 F.3d 898, 906, 907 (8th Cir. 2011).

### Analysis

As an initial matter, and as indicated above, because Porter failed to respond to or otherwise challenge Defendant's Statement of Uncontroverted Material Facts, the Court finds that there is no dispute as to the material facts. It will therefore turn to whether Defendants are entitled to judgment as a matter of law.

Defendants first argue that Dickerson's only use of force was manipulating Porter's arm out from under his body and behind his back so that Wallace could place Porter in handcuffs. They argue that the use of such force was minor and objectively reasonable. They also assert that she never kicked him and point to the witness's statement to Rice that Porter's shouts were untrue.

The Court finds, based on the facts before it, that there is no legally sufficient evidentiary basis on which a reasonable jury could find for Porter on his excessive force claim against Dickerson. Fed. R. Civ. P. 50(a). The use of force to move Porter's arm was objectively reasonable in light of the facts and circumstances surrounding his arrest: he was being pursued following the significant crime of burglary; he was apparently in possession of a pocket knife

6

that posed an immediate threat to Wallace; and he was actively resisting arrest following an attempt to flee. *See Thompson*, 894 F.3d at 998. Likewise, the arrest took place following a tense chase through a residential area and Dickerson was forced to immediately help restrain Porter as Wallace struggled to do so alone. *See id.* Finally, Porter's injuries were minor and, importantly, totally inconsistent with his allegation that he had been kicked or the injuries alleged in his complaint. *See Chambers*, 641 F.3d at 906, 907.

The Court also finds that there is no evidence at all on which the jury could find for Porter on his excessive force claim against Williams. The undisputed fact is that she never touched Porter or even left her police cruiser. Additionally, because Porter cannot show that either Defendant violated a clearly established constitutional or statutory right, the officers are entitled to qualified immunity. *Treats*, 308 F.3d at 871.

<strong>Conclusion</strong>

The Court concludes that there is no genuine issue as to any material fact and Defendants are entitled to judgment as a matter of law on Porter's claims of excessive force. *Celotex*, 477 U.S. at 322. Likewise, Defendants are entitled to qualified immunity.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Desree Dickerson and Arethee Williams's Motion for Summary Judgment (Doc. 19), is **GRANTED** and that Plaintiff Terrell Porter's Complaint (Doc. 1), is **DISMISSED with prejudice.**

An appropriate Judgment will accompany this Memorandum and Order.

Dated this 11th day of September, 2019.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE